COMMONWEALTH vs. ERIC W. GRIMSHAW.

Middlesex. March 5, 1992. - July 9, 1992.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Search and Seizure*, Nighttime search, Warrant. *Constitutional Law*, Search and seizure. *Words*, "Nighttime."

Discussion of the common law and statutory provisions concerning night-time searches of a dwelling house. [75-77]

Discussion of cases concerning evidence seized in violation of a statute and of the considerations applicable to a determination whether such evidence should be suppressed. [77-78]

In the circumstances of the execution of a search warrant in an apartment at 8:50 P.M., on December 20, the terms of which prohibited its execution "at anytime during the night," where the police actions were lawful except for failure to request a nighttime warrant and where exclusion of the evidence would not have tended to deter future police misconduct, the judge correctly denied the defendant's motion to suppress the evidence seized during the search. [79-80]

Discussion of the common law and statutory definition of the term "nighttime." [80]

The Court announced that, henceforward, the standard set forth in Fed. R. Crim. P. 41(h), will apply to nighttime search warrants, i.e., for warrant purposes, nighttime begins at 10 P.M. and ends at 6 A.M. [80-81]

COMPLAINT received and sworn to in the Cambridge Division of the District Court Department on December 21, 1990.

On appeal to the jury session of that division, a motion to suppress evidence was heard by *Mark E. Lawton*, J., sitting under statutory authority.

An application for an interlocutory appeal was allowed by *Greaney*, J., in the Supreme Judicial Court for the county of Suffolk and the appeal was reported by him to the Appeals Court. The Supreme Judicial Court on its own initiative transferred the matter from the Appeals Court.

*Jane Larmon White*, Committee for Public Counsel Services (*Lillian Salcines*, Committee for Public Counsel Services, with her) for the defendant.

*Marc A. Eichler*, Special Assistant District Attorney, for the Commonwealth.

LYNCH, J. The defendant appeals from an order of a District Court judge denying the defendant's motion to suppress physical evidence. At issue is whether a search conducted on December 20, 1990, at 8:50 P.M., pursuant to a warrant authorizing only a daytime search, was invalid and, if so, whether the seized evidence should therefore be suppressed.

Following a District Court bench trial on January 29, 1991, the defendant was convicted of possession with intent to distribute a class A substance and knowingly being present "where heroin is kept." The defendant appealed to the jury session of the District Court. Thereafter, the defendant filed a motion to suppress which was denied on February 15, 1991. The defendant petitioned a single justice of this court for leave to appeal the denial, see G. L. c. 278, § 28E (1990 ed.), and Mass. R. Crim. P. 15 (b) (2), 378 Mass. 882 (1978), which was allowed. The case was transmitted to the Appeals Court. We transferred the matter here on our own motion and now affirm.

The judge made the following findings: On December 20, 1990, the Cambridge police department applied for and was issued a search warrant that prohibited its execution "at any time during the night." At 8:50 P.M. on that date the police conducted the search. The defendant was among the four people present in the apartment at the time of the search and all were arrested after heroin was found in the apartment.

The judge did not determine whether the search at 8:50 P.M. was a nighttime search. Instead he concluded that "the search must be upheld because the defendant . . . has failed to show that he was prejudiced by the time of day at which the search was conducted. It does not appear that the police discovered something incriminating which they would not have discovered if the search had been conducted the previous afternoon or the following morning."

The defendant contends that 8:50 P.M. falls during the nighttime and, since the search was conducted in violation of the warrant's express prohibition against a nighttime search and G. L. c. 276, § 2 (1990 ed.),[1] the evidence should be suppressed to implement rights granted by the Fourth and Fourteenth Amendments to the United States Constitution, art. 14 of the Declaration of Rights of the Massachusetts Constitution, and G. L. c. 276, §§ 1 and 2.

At the outset, it is not necessary for this court to determine whether the search in this case was conducted at night. For purposes of analysis, we will assume that the warrant was executed at night. The question remains, however, whether the seized evidence should be suppressed. We conclude that, in the circumstances of this case, the evidence need not be suppressed and that, therefore, the judge correctly denied the defendant's motion.

1. *Background of nighttime warrant requirement.* At common law there was a strong hostility to nighttime searches of a dwelling house. *Commonwealth* v. *Hinds,* 145 Mass. 182 (1887). Nighttime searches were regarded with revulsion because of the indignity of rousing people from their beds. *Commonwealth* v. *DiStefano,* 22 Mass. App. Ct. 535, 541 (1986). The underlying rationale was that nighttime police intrusion posed a great threat to privacy, violated the sanctity of home, and endangered the police and slumbering citizens. 2 W.R. LaFave, Search and Seizure § 4.7(b), at 266 (2d ed. 1987). See, e.g., *Gooding* v. *United States,* 416 U.S. 430, 463 (1974) (Marshall, J., dissenting) (nighttime

---

[1]General Laws c. 276, § 2 (1990 ed.), provides: "Search warrants shall designate and describe the building, house, place, vessel or vehicle to be searched and shall particularly describe the property or articles to be searched for. They shall be substantially in the form prescribed in section two A of this chapter and shall be directed to the sheriff or his deputy or to a constable or police officer, commanding him to search in the daytime, or if the warrant so directs, in the nighttime, the building, house, place, vessel or vehicle where the property or articles for which he is required to search are believed to be concealed, and to bring such property or articles when found, and the persons in whose possession they are found, before a court having jurisdiction."

searches involve greater intrusion than ordinary searches); *Monroe* v. *Pape*, 365 U.S. 167, 210 (1961) (Frankfurter, J., dissenting in part) ("Searches of the dwelling house were the special object of this universal condemnation of official intrusion. Night-time search was [considered] the evil in its most obnoxious form"); *Jones* v. *United States*, 357 U.S. 493, 498 (1958) ("it is difficult to imagine a more severe invasion of privacy than the nighttime intrusion into a private home"). The common law, however, did not expressly prohibit nighttime searches. See *Commonwealth* v. *Hinds, supra* at 183 (declining to answer whether nighttime search warrant was valid at common law because validity and effect of warrant determined by statute that authorized nighttime search warrants). Many courts have specifically or by implication rejected the claim that the nighttime search limitation has any basis in either State or the Federal Constitution. See *Gooding* v. *United States*, 416 U.S. 430 (1974) (treating nighttime execution of search warrant as one of statutory interpretation and not as a Fourth Amendment issue); *United States* v. *Searp*, 586 F.2d 1117, 1121 (6th Cir. 1978), cert. denied, 440 U.S. 921 (1979) (nighttime search limitation under Fed. R. Crim. P. 41 not part of any constitutionally rooted prohibition against unreasonable searches); *United States* v. *Burke*, 517 F.2d 377 (2d Cir. 1975) (provision of rule 41 authorizing search at night not constitutional requirement); *United States* v. *Ravich*, 421 F.2d 1196 (2d Cir.), cert. denied, 400 U.S. 834 (1970) ("peculiar abrasiveness of official intrusions" at nighttime is reason for requirement of specific authorization for nighttime search); *People* v. *Glass*, 56 Cal. App. 3d 368, 372 (1976) (no showing of "good cause" required for execution of a search warrant at night because such a requirement is statutory and not constitutional); *State* v. *Brock*, 53 Or. App. 785, 794 (1981) ("genesis of the rule limiting nighttime searches" purely statutory), aff'd, 294 Or. 15 (1982). See also *Commonwealth* v. *Goggin*, 412 Mass. 200, 202 (1992) ("knock and announce" rule is a common law rule and is not constitutionally required); *United States* v. *Dauphinee*, 538 F.2d 1, 3 (1st Cir. 1976) (procedural steps

regarding warrant return under Fed. R. Crim. P. 41[d] essentially ministerial); *United States* v. *Castle,* 213 F. Supp. 52, 54 (D.D.C. 1962) (Federal statutory provision allowing nighttime search only upon showing of probable cause was not unconstitutional).

Since 1836 nighttime searches have been expressly authorized by statute in Massachusetts. *Commonwealth* v. *Garcia,* 23 Mass. App. Ct. 259, 260 (1986). Presently, G. L. c. 276, § 2, permits a nighttime search "if the warrant so directs." The statute thus embodies the important common law values of sanctity of the home and protection of the police and citizens associated with the nighttime search limitation. As such, the nighttime rule is designed to govern police conduct as a safeguard against abusive, arbitrary action in carrying out a constitutionally authorized search. Notably, there is no separate or additional requirement that there be a showing that cause exists for the issuance of a warrant to search in the nighttime. *Commonwealth* v. *Garcia, supra* at 261. The statute, furthermore, does not contain any specific provision requiring suppression of evidence for its violation. Cf. G. L. c. 272, § 99 P (1990 ed.) (provision in State's wiretap statute permitting suppression of evidence seized in violation of statutory requirements).

2. *Evidence seized in violation of criminal statutes not automatically suppressed.* Generally, evidence seized in violation of the law will be suppressed only if the violation is substantial or rises to the level of a Federal or State constitutional violation. *Commonwealth* v. *Sheppard,* 394 Mass. 381, 389-390, 391 & n.8 (1985) (no suppression required for violation of G. L. c. 276 and technical violation of art. 14 of the Massachusetts Declaration of Rights where the search was not conducted in unreasonable manner within meaning of art. 14). See *Commonwealth* v. *Freiberg,* 405 Mass. 282, 300 (1989) (error in return of warrant not a constitutional violation, therefore no ground for voiding an otherwise lawful search); *Commonwealth* v. *Aldrich,* 23 Mass. App. Ct. 157, 161-163 (1986) (noncompliance with warrant return requirement ministerial not requiring suppression of

evidence). Cf. *State* v. *Miller*, 429 N.W.2d 26, 35 (S.D. 1988) (although violation of statutory ten-day rule, probable cause had not dissipated, therefore suppression not required because "the letter, not the spirit, of the law was violated").

The defendant contends that the police invalidly executed the warrant by exceeding the scope of the daytime search requirement of the warrant. Therefore, the defendant argues, the search was tantamount to a warrantless search. We disagree.

"[A]s a general rule, the mere fact that an unlawful search and seizure has occurred should not automatically result in the exclusion of any illegally seized evidence." *Commonwealth* v. *Gomes*, 408 Mass. 43, 46 (1990). Accordingly, "the decision whether to exclude such evidence should properly turn on: (1) the degree to which the violation undermined the principles underlying the governing rule of law . . . and (2) the extent to which exclusion will tend to deter such violations from being repeated in the future" (citations omitted). *Id.* Other courts also examine the circumstances before suppressing evidence seized without a nighttime search authorization. As the court in *United States* v. *Searp, supra* at 1125, said: "When there has merely been a violation of the procedural rules governing night searches, suppression, with its attendant potential for a miscarriage of justice, is not justified when there was neither a possibility of bad faith conduct on the part of the police, nor prejudice to the defendant (in the sense that the search might not have occurred or would not have been so abusive if the requirements of the Rule had been observed). The test is met, and suppression would be required when, based on the facts and circumstances known to the police at the time application was made for the warrant, there is a reasonable possibility that permission for a night search would have been refused even if an appropriate request had been made." Cf. *United States* v. *Burke, supra* at 386 ("courts should be wary in extending the exclusionary rule in search and seizure cases to violations which are not of constitutional magnitude").

The circumstances in this case do not require suppression of the evidence. It is clear from the record that the police were acting lawfully in obtaining the warrant and, except as to time, had engaged in no misconduct in executing it. It is equally clear from the record that, had the police requested a nighttime warrant, they could have obtained one. See *Commonwealth* v. *DiStefano, supra* at 541-543. It was already dark when the police applied for the warrant which was issued at approximately 4:30 P.M. Although the police should have examined the warrant more carefully when the warrant was obtained, considering that it was already dark, it was reasonable for them to assume that the warrant authorized a nighttime search. They immediately proceeded to the premises, which they had kept under constant surveillance. The supporting affidavit clearly establishes that probable cause existed for the issuance of the warrant. In fact, the defendant neither challenges the validity of the warrant nor claims that probable cause did not exist for the warrant to issue. Moreover, the police entered in a peaceful manner after knocking; the time of the evening was not so late that most people would have already retired; and the defendant as well as the other persons present in the apartment were awake, fully clothed, and sitting in the living room. They therefore did not suffer the indignity of being roused from their sleep nor experience the fear generated by the police-state technique of the anonymous knock on the door in the dead of night. In these circumstances the police presence was not an intrusive violation on the sanctity of the home that the nighttime limitation is meant to preserve. Neither the common law nor the legislative intent behind the nighttime rule was infringed. The procedural letter, not the substantive spirit, of the law was violated.

Neither would suppression deter future police misconduct. Here the police complied with the law except for the failure to request the nighttime search. The warrant described the particular apartment and persons to be searched and the property or articles to be seized. The police limited the scope of their search to the apartment and to the property particu-

larized in the warrant. The police at all times were acting reasonably in obtaining and executing the warrant and their technical violation of the statute was a matter of procedure that infringed no substantive right of the defendant. We therefore conclude that the principle of deterrence underlying the exclusionary rule will not be undermined by the failure to suppress the evidence in this case. See *Commonwealth v. O'Connor*, 406 Mass. 112, 118 n.5 (1989). We therefore affirm the judge's order denying the defendant's motion to suppress.

3. *"Nighttime" defined for warrant purposes.* Since the statutes, rules of procedure, and our prior discussion contain no clear standard for the application of the "nighttime" limitation, we offer the following remarks to guide police in the future when applying for, and executing, warrants. "At common law, in criminal cases, night meant 'a period when the light of day had so far disappeared, that the face of a person was not discernible by the light of the sun or twilight.' " *Sodekson v. Lynch*, 314 Mass. 161, 164 (1943), quoting *Commonwealth v. Williams*, 2 Cush. 582, 589 (1849). By 1847 the term was defined by statute for all purposes of criminal proceedings as "the time between one hour after sunsetting on one day, and one hour before sunrising on the next day," *Commonwealth v. Williams, supra,* and that definition continues today in the form of G. L. c. 278, § 10 (1990 ed.).[2] See *Sodekson v. Lynch, supra,* quoting G. L. (Ter. Ed.) c. 278, § 10.

The Legislature has never defined "nighttime" or "night" for the purpose of executing a nighttime search warrant.[3]

---

[2]General Laws c. 278, § 10 (1990 ed.), states: "If a crime is alleged to have been committed in the night time, night time shall be deemed the time between one hour after sunset on one day and one hour before sunrise on the next day; and the time of sunset and sunrise shall be ascertained according to mean time in the place where the crime was committed."

[3]General Laws c. 4, § 6 (1990 ed.), provides: "In construing statutes the following rules shall be observed, unless their observance would involve a construction inconsistent with the manifest intent of the law-making body or repugnant to the context of the same statute . . . . Third, Words and phrases shall be construed according to the common and approved usage of

The peculiar and special meaning of nighttime in G. L. c. 278, § 10, is applicable to the crimes of burglary and breaking and entering. There is no indication that the Legislature intended that statutory definition to apply to the procedural law regarding search warrants. *Commonwealth* v. *Garcia*, 23 Mass. App. Ct. 259, 263 n.7 (1986).

Under Fed. R. Crim. P. 41(h), nighttime does not begin for warrant purposes until 10 P.M. Under the Model Code of Pre-Arraignment Procedure § SS 220.2(3) (1975), nighttime for warrant purposes is between 8 P.M. and 8 A.M. Since no universal standard has been called to our attention or has emerged from our study, we shall in the future apply a rule that protects the public from unreasonable intrusions by the police, is in keeping with current life-styles, and gives the police notice as to the precise time in all seasons when permission for a nighttime search must be requested. We conclude that these ends are best achieved by the nighttime rule articulated in Fed. R. Crim. P. 41(h). Henceforth, for warrant purposes, nighttime begins at 10 P.M. and ends at 6 A.M.

> *Order denying the defendant's motion to suppress affirmed.*

---

the language; but technical words and phrases and such others as may have acquired a peculiar and appropriate meaning in law shall be construed and understood according to such meaning."